Welcome. We appreciate everybody appearing today and are grateful for Judge Tashima being here. Even though it's had to be by remote, we're grateful to those who made technical arrangements to allow that to happen. The last time Judge Tashima came to Philadelphia, we had a blizzard. If that happened in early June, that would really upset things. Yes, it's about 75 here today, and good morning to you, or good afternoon. Thank you. Well, we have the case of In Re Montgomery Ward on for this afternoon, so why don't I go ahead and ask Mr. Welch if you want to go ahead and proceed. May it please the Court, Your Honor. Appellants and Cross Appellees, if I may, on a request of Your Honors, I would like to reserve three minutes of rebuttal time, if possible. All right. Can you start by just telling us how you pronounce, is it Dyke Award, is it Deke Award, is it, how do you say it? I say it Dyke Award, Your Honor. Okay. Okay, thanks. Okay. I guess we're, there's so many possible start points here. I guess where I would start is perhaps dealing with the 1111B issues that were dealt with in the Bankruptcy Court and the District Court. Well, make sure you save time for the res judicata, because I'm particularly interested in that. Okay, I will do that, Your Honor. The plan administrator argues that the State Farm claim is a non-recourse claim that should be disallowed in the second ward bankruptcy case, because the ward two debtors, if you will, have no personal liability for the claim. Our view is that that position ignores the plain meaning and the literal reading of the statute itself. If it's so plain, Mr. Welch, how come you don't seem to have any authority for it? Well, I'm not sure that there's authority going either way, Your Honor, and I think possibly because that it is so plain that it just is what makes the most sense. Well, they do, in their briefing, cite some cases that indicate that the same thing that the Bankruptcy Court said, which is this 1111B doesn't operate to make something that had been non-recourse into a recourse loan except in the context of a distribution, which this isn't. They did cite some cases to that effect. Right, Your Honor, and I think those cases are a definitely distinguishable here, but I think when we look at the statute itself, it just simply says that you can convert, you can, I think even the DRW Court used the word transform. You can transform the non-recourse claim into a recourse claim by confirming a Chapter 11 plan, where there's no election and there's no sale. Respond to the argument I understand your opponents to be making on 1111B, which is that to accept your reading of that would in effect permit a double recovery. You've got a circumstance where the property is taken subject to the mortgage, so there's still recourse against the property. Whatever it's worth is what you got. It's not subject to some undervaluation in a bankruptcy setting where you're going to lose value. So to allow you to have both the security of the property and to have recourse against the debtor personally is giving you a double benefit, which the statute wasn't designed to allow. Now, I'm sure I didn't do justice to that and Mr. Weisenberg say it better than I did, but I take that to be the gist of their pitch. What's wrong with that? Well, I think what's wrong with that, Your Honor, is that that's no more of a double dip than any secure transaction, where any creditor would have the right to the value of the collateral plus any deficiency that could arise in the event the value of collateral is insufficient. All 1111B is doing is converting the non-recourse where they didn't have that right in conjunction with confirmation of a plan and giving the creditor that right. So your idea of 1111B is it's a really great deal because it gives people more rights than they ever would have had. I mean, if this had never gone into bankruptcy, you'd have no argument that this suddenly became a recourse loan, right? I think that's exactly what the statute provides, yes. So that the bankruptcy code in 1111B is designed to give folks in your client's position better rights than they ever had before. And I think that, yes, and I think that's exactly what the statute says because it says it converts it from non-recourse to recourse. What's the purpose of that? Your Honor, I think it has to do with the entire facilitation of the Chapter 11 process. Everybody gives up to get. What do you give up? You get something. You don't give up anything. You're getting something extra. Your Honor, for years they gave up the right to payment. Until a plan was confirmed, they received nothing. They gave up plenty to be any creditor in any Chapter 11 case. When that playing field gets leveled, basically you're stuck with the position of having to forbear from their ordinary state court remedies, to forbear from collecting as they ordinarily would outside a bankruptcy court. And in many instances, especially as in Montgomery Ward's case, received nothing for many, many years until the plan is confirmed. And what you get in exchange for that is you get some additional rights provided in the statute. Okay. I don't know whether my colleagues have anything to ask you about 1111B, but if they do, I sure welcome it. But I'm interested in the CAM argument that you've made. And first, I want to make sure I understand. Is it fair to say that everybody, the bankruptcy court and the parties here, have treated that shorthand term, CAM, as encompassing all the common expenses, not just paragraph 13B expenses, but everything? Well, I know that we have, and I believe certainly most of the time the plan administrator has. But I think in terms of when they say that the CAM claim was discharged, I think they necessarily then slip back into arguing that it was only the 13B CAM. As we lay out in our brief, there's much more than that. Yeah. So, if the bankruptcy court and the parties were talking about this in terms of saying, look, there's no CAM liability, that's a statement that there's no liability for whatever common expenses there might have been, whether they were covered by 13B or 13C or 13L. Is that right? Yes, Your Honor. I believe the breadth of the bankruptcy court order as affirmed by the district court eliminates the entire claim for common area maintenance and not just that claim that emanates under 13B. And that's really the problem as we see it. I think we even acknowledge it. But you've defined it as you've talked about it in your own briefing, you use that same CAM shorthand to mean everything, don't you? Yes, sir. Okay. So, can the bankruptcy court be faulted for understanding and operating on the principle that if it viewed the CAM stuff as handled, it handled everything, not just 13B stuff? It can be faulted when in looking at all of the CAM, it disallows all of the CAM based upon a provision that only applies to 13B. All right. Let me ask this about the CAM payments. The only people entitled to the CAM payments under the documents were the owners. Is that right? The mall owners? I believe that's true, yes, Your Honor. All right. And the mall owners settled with the debtors, correct? Yes. All right. Now, if I understand that you folks dispute what the bankruptcy court read it to mean, that would indicate that all the liability associated with CAM was resolved by the stipulation, correct? If I had to predict what the bankruptcy court was thinking, I would agree with Your Honor, yes. All right. And if that's true, how could Dyke Award possibly be liable for any CAM expenses? Well, I think it would be under what theory? Well, because I think the problem is with the bankruptcy court's position in the start. I think they're wrong in saying that Dyke Award wouldn't be responsible for CAM. They are. The breadth of what they have looked at in the context of what was settled, who settled it, how much was settled, for what, goes well beyond what any of that provides, what any of that provides. Okay. So, again, your disagreement is how the bankruptcy court read the stipulation, but you don't disagree that if that were an accurate reading of the stipulation, you'd have no claim for CAM, correct? Yes, if that were an accurate reading of the stipulation. All right. Thanks. I note that I have a couple minutes left, and I wanted to make sure that I... I realize it's a cross-appeal, and really you shouldn't, but we don't have much time to argue. I understand, Your Honor. I'm prepared to address any particular question that Your Honor may have with respect to res judicata. Well, what interests me is whether the plan administrator can really, said to be the successor and bound by what was done by the debtor in Ward 1, because the plan administrator didn't really exist until after Ward 1 had been tied up. That's true, Your Honor. Matter of fact, I guess maybe even perhaps technically if we were to look at some of the Ward 2 debtors, I'm not sure to in what... ask what manner they perhaps existed as well, but the... Well, I imagine they were possibly very different from the... Well, except the interest would be the same, and I think the focus is on the interests that were at heart. I mean, you can't have a plan administrator, you know, until one's required by the second plan, but the fact of the matter is is that the plan administrator's interests are, you know, identical to the interests of the Ward 2 debtors. The Ward 2 debtors' interests are identical to the Ward 1 debtors. How are they identical? They're a different group of creditors, aren't they, in Ward 1 and Ward 2? To some extent, I'm sure there were a different group of creditors. I'm not sure. Well, then how can their interests be the same? You said the interests of... I'm sorry, Your Honor. Go ahead. In our brief, what we argue is that the fiduciary relationship of the Ward 2 debtors to its creditors compared to the fiduciary relationship of the Ward 1 debtors to its creditors is what creates the common interest. Now, there were crossovers. I'm sure if we spread out the bankruptcy schedules, there's crossover from Ward 1 to Ward 2. And I'm sure there's additional creditors as well. Why don't you respond to the argument that the interests are really very divergent because in Ward 1, it's a reorganization. In Ward 2, it's a liquidation. And so things that would make sense to do in the context of the first make no sense to do in the context of the second. Well, I guess I would take the opposite approach, Your Honor, and I would say that the issue remains creditors being paid, whether it's in the context of the reorganization... I think you're ducking the question, and I would rather have you duck it and give your own version. I apologize, Your Honor. I'm not trying to duck it. I'm trying to answer it... Well, you concede when you're in a really different posture in a reorganization than in a liquidation, right? Absolutely. Okay, and so creditors in a reorganization will want certain things to stay with the business and be prepared to give things up to have that happen, where in a liquidation, they just don't have that interest. On the contrary, they want to get stuff liquidated. I mean, it seems to me that's self-evident, right? Yes. Okay, so if you've got such divergent interests with the first group of creditors than you have with the second group of creditors, how is it that you can say there tonight that the interests of the second were adequately represented by the first? Because the focus shouldn't be on how the creditor is being paid. The focus should be on the creditor's claim. How they get paid, I don't think is where the focus should be, and I apologize, Your Honor. I wasn't trying to duck the question, but that's where I was trying to get to was that what the debtor proposes to pay the claim shouldn't dictate whether or not something that occurred in the first case should be barred in the second case. The fact of the matter is that if the parties were the same, the claims existed, and the same issues existed, they should be barred. Is there, if it is the case that Judge Gross and then in turn Judge Foreman on appeal were correct in concluding that Dyke Award doesn't have any recourse with respect to the mortgage, the lease, and the sublease, and if they are correct that there's no claim for CAM expenses, does that make sense? Your Honor, you've asked a question that I am entirely unprepared for and I'm thinking it through, but I think the problem is that there are issues that remain unresolved regardless of the outcome of what happens here. Well, those are the only issues that have been brought to us, and I'm trying to, when you say there are issues that would be left, if in fact there's no substantive right under 1111B as you describe it, and there's no CAM claim, what would there be left for the bankruptcy court to do or for you to argue about? On those issues, nothing, Your Honor, and I understand that's all that's before you. On those issues, that I understand the res judicata point is made to is as to those issues, right? Is there something else the res judicata issue is being targeted at? No. So, if those things are resolved, then the res judicata point is immaterial, isn't it? Yes. Okay. I know that I'm way over on my side. May it please the Court, my name is Brent Weisenberg of Cooley LLP, counsel for the appellee cross-appellant, the plan administrator for Montgomery Ward. Under the confirmed Ward 2 plan, the plan administrator succeeded to all the powers of the Ward 2 debtors and is to general unsecured creditors. As you've heard, there are three issues before this court. First, the critical issue for the plan administrator and the Ward 2 creditors that it represents, whether res judicata bars the plan administrator's claim that the Joe Ward contract is a financing rather than a true lease. Let's start with that and I'll ask you to answer the last question that I put to Mr. Welch. Your Honor, that's exactly where I thought you were going. I maintenance and the non-recourse nature of the mortgage and note causes of action that still leaves Joe Ward with a lease rejection damage claim. And what the plan administrator is arguing is that if it can assert the recharacterization claim, there was no Joe Ward lease. Because there was no lease, it cannot assert a lease rejection damage claim. If we're ultimately successful in to assert what would be a $6 million lease rejection damage claim and therefore the distribution to general unsecured creditors would be increased. The first issue is res judicata and whether privity can bind the plan administrator and the Ward 2 creditors to the Ward 1 debtors treatment of the lease in Ward 1. To be clear, this court is not being asked to address the merits of the recharacterization claim. Whether there is privity between the Ward 1 debtors and the plan administrator in Ward 2 depends on whether the plan administrator's interests were represented by the Ward 1 debtors. The lower courts, more particularly the bankruptcy court, found that the Ward 1 debtors had knowledge and an opportunity to assert the recharacterization claim. The lower court's decisions on res judicata were erroneous, however, because the Ward 2 creditors' interests were not represented by the Ward 1 debtors. Well, why don't you go right at what your opponents argue in their briefs, if you would. They say, hey, we got the Supreme Court speaking on Taylor and Taylor says if you've got a successor in interest or an S&E relationship, that's a sort of special recognized relationship in the law which means there is an identity of parties in effect. Why are they wrong in understanding Taylor to say that? Taylor is crystal clear in that it holds that there are six very limited exceptions to non-party preclusion. I don't think any of those exclusions apply here. In Dyko Ward's brief, it doesn't identify what the Ward 2 debtors were successors in interest to or how there was any agency relationship between the Ward 1 debtors and the Ward 2 debtors. Well, are they the folks who took over, in effect, the assets of the bankruptcy estate and tried to operate the business before it came unglued for the last time? Pre-Ward 1, Montgomery Ward was a public company. Following the Ward 1 confirmation order, GE took the company private by purchasing all the equity interests through the Ward 1 plan. GE's equity interests were subsequently discharged or deemed valueless in the Ward 2 plan. So what you've had is a successive number of equity interest holders and you've had successor debtor cases. And what I hear them saying is, they're a successor in interest in the sense that there was a business called Montgomery Ward. It got reorganized. At the back end of that, there was a business called Montgomery Ward. It was being operated and then it got liquidated. And the business that emerged after the reorganization is the successor in interest to the business that was operating before. And therefore, you got a successor in interest. Is that factually erroneous? Is it logically flawed? What's the problem with viewing the business that comes out of the reorganization as the successor in interest to the business that went into the reorganization? Your Honor, I think it would be a mistake to simply bind a successor in interest merely because the names were identical. I think what Taylor directs is that you have to look at the respective interests of those entities. And the mere fact that their names are the same doesn't mean their interests were aligned. Here you have successor debtor cases. And for example, in James I'll let you go off on that. I think we're using the word interest in an equivocal way here and I don't want that happening because it'll confuse me for sure. I understand the word interest in successor in interest to mean you had something, now I've got something. Not to mean, well you'd like something to happen but I want something different to happen. In the sense of success interest meaning you had something and now I've got it, is the business that came out of the reorganization a successor in interest to the business that went into the reorganization as a matter of law? Because that seems to be what they're pinning their argument on. Your Honor, I'm not trying to duck the question but I think we have to understand the ramifications of confirming the Ward 1 plan and to what extent legally the post-confirmation Ward 1 debtors can be deemed a successor in interest to the pre-Ward 1 debtors. What you had there was a confirmation plan which discharged all the debtors, all the Ward 1 debtors, pre-petition obligations. So while it succeeded to certain rights, it wasn't burdened by some of the other obligations. In addition, its equity interests were different. So I think legally speaking you were looking at two different entities. I'm sure of that. That's not my question. The question is, in the ordinary use of the word successor in interest in legal parlance, is the post-reorganization Montgomery Ward the successor in interest to the pre-reorganization Montgomery Ward? That's the only thing I'm trying to ask. I know it's different, it's some different legal entity that's carrying on the business. I'm just trying to figure out if your argument depends upon them not being a successor in interest in that ordinary sense, I'd like to know it. Your Honor, I think that for purposes of this argument, I can see that they were a successor in interest because what we're proposing is that it's not the end-all and be-all. Okay, fine. Then explain why. Reason being is because I think Taylor would direct this court to look at the respective interests, and when I'm using the word interests, I'm talking about their motivations and desires in endgame, to look at their respective interests and to determine whether in this case the plan administrator's interests were adequately represented in the Ward 1 case. That is one of the narrow exceptions to the basic rule against non-party preclusion. So this court would have to look at whether the interests of Ward 1 were aligned with the Ward 2 debtors' interests. If they were not aligned, then there can be no privity, and then this court must find that res judicata does not apply. So let me explain a little bit about the respective interests of the Ward 1 and the Ward 2 debtors. The Ward 1 debtors' interests were on reorganizing the debtors' business operations and keeping profitable stores open. To determine which stores were profitable, the Ward 1 debtors did not need to review the true nature of the underlying Jail Ward documents or determine the legal relationship between the debtors and Jail Ward. All the Ward 1 debtors needed to know was the projected sales and expenses for the Joliet, Illinois store and its projected profitability to determine whether the debtors should continue operating the Jail Ward store. That was the only analysis that the Ward 1 debtors were concerned with. In contrast, in Ward 2... Well, but you see, Mr. Weisenberg, I mean, that's only one step in the analysis of, you know, what's in the best interest of the creditors, right? That's what the trustee does. And it all depends on how broadly you define interest. I mean, basically, the interest always has been, you know, in a sense to get the best deal for the creditors, right? That's what it amounts to. And for instance, if, you know, a reorganization is not going to do it for the creditors, then, you know, they would then opt for a liquidation. I mean, they could have done that the first time, but they just chose not to. So the end game is the same, isn't it? Your Honor, I apologize if I'm not answering your question directly. If I'm not, then please jump in. But my response would be that in Ward 1, there was a meeting of the minds amongst the Ward 1 debtors and its creditors that reorganization was the result that all wanted... that was the result that everyone wanted to be achieved. In Ward 2, that was not the case. It was a liquidation from Day 1. So what I'm trying to convey to the Court is that in Ward 1, there was no economic or other incentive for either the Ward 1 debtors or the Ward 1 creditors to ever look at the Jill Ward contract to determine whether it was a true lease or a financing. And what I'm proposing to you is in Ward 2, those interests are completely different than what they were in Ward 1. In Ward 2, every contract has been picked up and reviewed to understand the underlying nature of the relationship between the parties, because the plan administrator is charged with maximizing the distribution to general unsecured creditors. And the only way it can do that is by picking up the Jill Ward contract to determine the true nature, excuse me, of the relationship. Whereas in Ward 1, there was no such incentive. The Ward 1 creditors were concerned with reorganizing debtors' business, and the only analysis they took was looking at the profitability of the store. In essence, they had no one in Ward 1 to protect their interests. What exactly would be the legal effect of a determination that there was error in saying that there had been race judicata? You would presumably go back to the bankruptcy court and you would have to make the case and win the case that this was a structured financing as opposed to a true lease, right? That's correct, Your Honor. Well, just a minute though. But the bankruptcy court never reached, you know, the similar issues of a waiver or estoppel, right? Wouldn't it have to first, you know, go through that analysis before it got to the merits, so to speak? Your Honor, if this court found that there was no privity between the plan administrator and the Ward 1 debtors, then waiver or estoppel could not bar the plan administrator from asserting a structured financing claim. Well, what are you saying? You're saying that our determination of the race judicata issue is also determinative of the waiver and the estoppel issues? Your Honor, the bankruptcy court made no particular findings of fact with respect to the waiver and estoppel issues. But if this court found with respect to race judicata that there was no privity between the plan administrator and Ward 1 debtors, I believe by virtue of that finding, waiver or estoppel could not apply to bind the plan administrator to the actions of the Ward 1 debtors, whether it be via estoppel or waiver. Well, of course, there's another basis on which to decide the race judicata issue aside from privity, and that's whether or not it's the same cause of action, right? Now, if we decide on that basis, would your analysis still apply to the waiver and the estoppel claims? Your Honor, you make a very fair point. There are three prongs of race judicata, as you well know, and if this court makes its decision on either of the other two prongs, then I don't believe that would estoppel, sorry to use that word, the equitable estoppel argument or the waiver argument. However, like I said, if it did hinge its opinion on privity, then I do believe that those other two arguments could not be raised by virtue of this court's finding. I have just about a minute and a half, so I'd just like to quickly address the non-recourse nature of the mortgage and note and CAM very quickly. The factual and legal record before this court clearly establishes that the lower courts correctly held that the mortgage and note were and remain non-recourse obligations. There were three documents, the Ward 1 stipulation, the Ward 1 plan, and the Ward 1 confirmation order, which each unambiguously provided that the legal, equitable, and contractual rights under the mortgage were unaltered. The appellant argues that Section 1111B of the Bankruptcy Code converted the mortgage and note to recourse under the Ward 1 plan and amended the very nature of the mortgage and note to recourse after confirmation of the Ward 1 plan, but the plain language of Section 1111B of the Bankruptcy Code states otherwise. Yeah, I know. We've heard you both say how plain the language is and how opposite it comes out. So plain. Well, Your Honor, when I cite to the plain language of 1111B and I quote, it says, a claim secured by lien on property of the state shall be allowed or disallowed under Section 502. I'm sure we've all read it a few times. And I point that out, Your Honor, because I believe that the reference to Section 502 is extremely important here because when this court looks at Section 502 of the Bankruptcy Code, it will see that Section 502 only deals with claims, a term which is defined in Section 101 of the Bankruptcy Code as involving a right to payment. So under Section 502 of the Bankruptcy Code, you're dealing with the allowance and disallowance of claims and the monetary amount of those claims. Neither Section 1111B nor Section 502 ever addressed the character of the underlying obligation. Right. And the Bankruptcy Court was plain on that. If my colleagues will indulge me, I want you to take a moment on our dime here to go back to the beginning where you said that resolving the issue with respect to CAM and resolving the issue with respect to whether there's recourse would not, that affirming on those points would not dispose of this appeal in its entirety. So run that for me one more time and explain what that lease recharacterization issue is again. Okay. There were two claims filed against the Ward 2 debtors. One claim by State Farm, which was on account of the mortgage and note. The second claim was filed by Joe Ward, which was a lease rejection damage claim. It is Montgomery Ward's position that the asserting a recovery against Montgomery Ward Estates, but that still leaves the Joe Ward claim. The Joe Ward claim, which is a lease rejection damage claim. A component of that claim is common area maintenance. So if this court affirmed the lower courts and held that CAM could not be asserted against the debtors, it takes care of but one piece of what is the Joe Ward rejection damage claim, but it doesn't get rid of the claim itself, which has other components. So what other components specifically are? Well, there's a lease rejection damage claim. So for example, the lease that was due under, I'm sorry, the rent that was due under the lease up until its expiration can be asserted under the bankruptcy code as a rejection damage claim. So you have that piece, you have other components, which may include failure to maintain the premises or failure to pay taxes. None of those issues will be finally determined by this court's ruling with respect to CAM. Thank you. Thanks very much. Thank you, Your Honors. Mr. Welch, your rebuttal. And I'll ask you right at the start, do you agree with that final point? Your Honor, and thank you. That's exactly where I was going to go with it. On that point, I do agree with Mr. Weisenberg. And that's where I was getting confused in my response to you, was trying to differentiate between this court and elsewhere. There are major elements of the Jalwar lease rejection claim that are not dealt with in the context of the ruling that's before you here. The CAM is just a component of that. And I apologize for not responding properly. If I could go back to the interest argument that we've been having here a little bit today, I just don't see where the Taylor case says to focus on interest in conjunction with whether or not there's a reorganization or a liquidation. I think I agree that the focus is on paying the claim and whatever it takes to get to that point. So that's the interest that I think are being talked about. Well, wasn't Taylor about rejecting the idea that there could be virtual representation, that if somebody was sort of close to where you were and what was at stake, that that wasn't good enough because we want to make sure that only people whose legal arguments they are motivated to make really end up getting bound by what happens in the earlier proceeding. That seems to be the gist of Taylor, at least that's what your opponents argue is the gist of Taylor. If that's true, what's wrong with their assertion that these people weren't motivated at all to make the arguments that are crucial to us and therefore they can't possibly be viewed as adequately representing our interests? Well, I think it goes to what I think you were talking about when Mr. Weisenberg was standing here, and that goes to it's the whole bit, whatever Ward 1 had went to Ward 2. Whatever it had, whatever business, whatever assets, whatever liabilities it had, Ward 1, it became the assets, the liability, and the business and the financial obligation of Ward 2. How Ward 2 ultimately, and I mean ultimately because on the back end, they ended up liquidating the pay, but that certainly wasn't what was expected when the Ward 1 plan was confirmed. So I think the focus really isn't on how you get to pay the claims, it's what did the successor, in my word, the successor, what did the successor acquire? It acquired everything that Ward 1 had on the asset side and the liability side. And under those circumstances, how Ward 2 could not be considered a successor in interest to Ward 1, I think is exactly the sort of argument that frankly is an easy argument under the Taylor rationale. But the fact that you have privity in many questions does not prevent a question from privity. Is that not correct? I would agree with you, Your Honor. I would agree with you, Your Honor. I see my red light is on. I appreciate the opportunity to appear. Thank you. All right. Thank you very much, counsel. We'll take a short break. I'll ask the court crier to clear the courtroom and we'll go ahead because we have our video link up here. We'll resume here in three, four minutes if that's all right with Judge Tashima and have some discussion. So let's